**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| NEELU SINGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.: 1:11cv844 (LMB/JFA) |
| | ) |
| LING TECHNOLOGIES, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>PARTIAL MOTION TO DISMISS OF DEFENDANT LING TECHNOLOGIES, INC. (VIRGINIA CORP.) AND LING TECHNOLOGIES, INC. (PENNSYLVANIA CORP.)</u>

This case against Ling Technologies, Inc. (a Virginia corporation) and Ling Technologies, Inc. (a Pennsylvania corporation) (collectively, "Defendants") is, at its core, a dispute about a former employee's compensation under two purported written employment agreements.[1]  But rather than resolving this relatively simple dispute, plaintiff seeks to transform this case into something larger and more ominous than what it is by appending claims of forced labor, abuse of process, defamation, and rescission of mysterious documents that plaintiff does not deign to identify or describe.  In so doing, plaintiff has created a teetering mass of tort and contract claims that, without facts sufficient to form an adequate foundation for the claims asserted, proves too flimsy to support her theories of relief and ultimately collapses under its own weight.

The central infirmity of the Complaint is plaintiff's reliance on conclusory assertions and sparse allegations of critical facts.  The Complaint would likely not pass muster under Rule 8

---

[1] Plaintiff has sued two separate entities:  Ling Technologies, Inc. (a Virginia corporation) and Ling Technologies, Inc. (a Pennsylvania corporation).  Where specific reference to one or the other defendant is necessary, for the sake of brevity the defendants will be referred to as Ling Technologies (VA) or Ling Technologies (PA), respectively.

even under pre-*Iqbal/Twombly* standards, but by papering over factual deficiencies with conjecture and bare legal conclusions, plaintiff succeeds only in presenting the "defendant unlawfully harmed me" type of accusations that plainly cannot be countenanced under post-*Iqbal/Twombly* precedent.  Because plaintiff's Complaint is devoid of sufficient facts to set forth any plausible claims, plaintiff's claims under Counts One, Two, Four, Five, Six, Seven, Eight, and Nine should be dismissed.

## ARGUMENT

A motion to dismiss made under Rule 12(b)(6) should be granted if the plaintiff does not articulate enough facts to state a claim to relief that is plausible on its face.  If plaintiff's factual allegations do not "raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007), the claims must be dismissed.  In deciding whether a "plausible" claim has been stated, only allegations of fact have any consequence.  Statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Similarly, "[l]abels and conclusions" carry no weight and "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

In construing the pleadings, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).  Moreover, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *see Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)  ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."); *see*

*Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) ("The fact remains that where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."); *see also Hinton v. Trans Union*, *LLC*, 654 F. Supp. 2d 440, 449 (E.D. Va. 2009) (internally inconsistent allegations failed to state a claim for relief that was plausible on its face).

The common deficiency running throughout plaintiff's Complaint is the inability to assert *facts,* rather than conjecture and legal conclusions, that support her claims.    Plaintiff's conclusory statements on essential elements of her claims in Counts One, Two, Four, Five, Six, Seven, Eight, and Nine are an inadequate substitute for actual facts, and cannot nudge the Complaint across the line between possibility and plausibility.

## I.      COUNTS ONE AND TWO FAIL BECAUSE PLAINTIFF'S CLAIM IS INTERNALLY INCONSISTENT AND SHE LACKS STANDING TO SEEK THE REQUESTED RELIEF.

### A.    Counts One And Two Fail To State A Plausible Claim Because They Are Internally Inconsistent And Contradicted By The Exhibits To The Complaint.

Counts One and Two fail to state a plausible claim because they are wrought with internally inconsistent allegations and specifically contradicted by the exhibits attached to plaintiff's Complaint.  *See Hinton*, 654 F. Supp. 2d at 449.  The purported written agreements that form the foundation for the breach of contract claims expressly state that the contracts cannot be amended except by written agreement.  (Compl. Exs. 1 & 2.)  However, plaintiff bases her breach of contract claim on modifications to those purported agreements without alleging the existence of any writing.  Since her breach of contract claims are inconsistent with the exhibits to her Complaint or, at the very least, do not contain enough facts from which the validity of the purported amendments can be plausibly deduced, her breach of contract claims must be dismissed.

Count One of plaintiff's Complaint is based on the alleged failure to pay amounts referenced "through and up to May 13, 2009." (Compl. ¶ 86.) Although it is not clear, since the alleged compensation to which plaintiff claims entitlement in the text of the Complaint differs from the compensation specified in the purported attachment to her Complaint, it appears that she bases her claim on a supposed modification to the purported agreement. (Compl. ¶ 26.) However, the purported agreement attached to plaintiff's Complaint requires that ***any*** modifications to the agreement be made in writing, and plaintiff does not allege that any such writing exists.

Similarly, in Count Two, plaintiff's breach of contract claim is based on the alleged failure to pay compensation owed between May 2010 and August 2010. (Compl. ¶ 88.) However, Count Two is again based on an alleged modification to the terms of compensation contained in the purported agreement. (Compl. ¶ 34.) And just as before, the purported agreement requires that any modifications be made in writing, and plaintiff does not claim that any written modification occurred.

The fundamental infirmity is that plaintiff does not—and cannot—allege that any written modification occurred. Since the purported agreements attached to the Complaint ***prohibit*** modifications not made in writing, and no writing modification is alleged to have occurred, plaintiff does not articulate a plausible basis for her breach of contract claims. Furthermore, if plaintiff's claims are based on nothing more than an oral modification of the agreements, her claims must be dismissed because they are internally inconsistent with the documents attached to the complaint since each purported agreement only allows modifications if made in writing. *See, Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) ("The fact remains that where a plaintiff attaches documents and relies upon the documents to form the

basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim").

Either way, plaintiff's breach of contract claims must be dismissed.

### B.    Plaintiff Lacks Standing To Assert Claims Relating To Money Allegedly Due To The Federal Government.

Plaintiff's claims for amounts allegedly due to the federal government must be dismissed or stricken from Counts One and Two of the Complaint because plaintiff does not have standing to assert such claims.   (Compl. ¶ 86.)   It is well-settled that a plaintiff bears the burden of establishing the "irreducible constitutional minimum of standing," which requires a showing that: (1) the plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is "likely," and not merely "speculative," that the injury will be redressed by a favorable decision by the Court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   In asserting claims for money allegedly due to the Federal government, plaintiff has not only failed to meet all three of these constitutional prerequisites, but plaintiff's own Complaint specifically asserts that plaintiff is not the party that has suffered an injury.   Accordingly, plaintiff's claims for money allegedly due to the Federal government in Count One must be dismissed or stricken from the Complaint because plaintiff cannot establish standing under Article III of the Constitution.

Plaintiff has not alleged—and cannot allege—that she has suffered any "injury in fact." An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"  *Id.* (internal citations omitted).   Specifically, plaintiff is required to allege "specific, concrete facts" demonstrating that the defendants' alleged failure to pay taxes to the Federal government have personally harmed plaintiff.  *Warth v. Seldin*, 422 U.S. 490, 508 (1975).  However, plaintiff's Complaint consists of nothing more than a single vague and general conclusion that "employer's

share of [FICA and FUTA] taxes, [are] due and owing to your Plaintiff, and the federal government" (Compl. ¶¶ 22, 25).   The well-established principal that statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim, *Iqbal*, 129 S. Ct. at 1950, is especially apropos when asserting the threshold requirement of legal standing.  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth*, 422 U.S. at 518.

In this case, plaintiff does not allege any facts to support the conclusion that Defendants should pay their federal taxes to the plaintiff, which is contrary to existing federal tax law. Nowhere in the 105-paragraph Complaint does plaintiff specify whether she asserts standing because of her status as a taxpayer, as a citizen, or pursuant to any other theory; nowhere does she specify how or when she was injured because of Defendants alleged failure to pay taxes. Even more problematic is the fact that plaintiff's conclusory assertion that Defendants' share of taxes is due and owing to the plaintiff is contradicted by plaintiff's own Complaint.  Specifically, plaintiff asserts "employer's share of taxes owing to the Federal government, remain overdue and owing to your plaintiff, without offset."  (Compl. ¶ 86.) (Compl. ¶ 105 (seeking "employer's share of FICA and FUTA taxes on said wage amounts").)  Because plaintiff's single conclusory claim to federal taxes is without factual support and is contradicted by other assertions in the Complaint, it must be dismissed or stricken. *See Richmond Financial Holding Co. v. Richmond*, No. 89-00336, 1990 U.S. Dist. Lexis 19616, at *9 (E.D. Va. Aug. 14, 1990) (dismissing a claim when a single conclusory assertion was contradicted by other allegations in the complaint).

Without alleging injury, plaintiff cannot possibly satisfy the remaining threshold standing requirements.  Indeed, "[a]bsent the necessary allegations of demonstrable, particularized injury,

there can be no confidence of a real need to exercise the power of judicial review . . ." *Warth*, 422 U.S. at 508.  Therefore, because "the Article III judicial power exists only to redress or otherwise to protect against injury to the complaining party," claims made by plaintiff for money due to the Federal government must be stricken or dismissed from the Complaint.

## II.     PLAINTIFF'S RESCISSION CLAIM IN COUNT FOUR IS TOO SPECULATIVE AND AMBIGUOUS TO SURVIVE A MOTION TO DISMISS.

Plaintiff's claim for rescission also fails to meet basic pleading requirements.  In Count Four, plaintiff asks for the rescission of an unknown number of unidentified documents that plaintiff can neither name nor describe.  (Compl. ¶ 29 (seeking rescission of an "offer letter" and "other August 2010 documents").)   In fact, plaintiff does not even inform the Court or Defendants about what the documents are alleged to contain or what may be the legal effect of the documents.  Instead, plaintiff vaguely asserts that she was forced "to sign some sort of undated revised document," "the contents of which are unknown."  (Compl. ¶¶ 119 & 123.) Plaintiff's allegations serve only to underscore the lack of merit of her rescission claim.  She does not know what the document is and or even if the document is a contract or some other written instrument.  All she offers are fanciful theories about what the document *might* be, claiming, for example, that the disputed document *might* (or might not) be a representation or release as to wage amounts allegedly owed to her.  A litany of speculative "what ifs" cannot overcome the vast emptiness of plaintiff's rescission claim.

Despite plaintiff's inability to explain what the documents are, what the documents contain, how the documents are used (or even if the documents were used at all), or how (if at all) the documents caused her any cognizable injury, plaintiff asks the Court to rescind or set aside the documents or, in the alternative, grant an "award of all monetary amounts or losses suffered by Plaintiff."  (Compl. ¶ 31(c).)  In short, plaintiff asks the Court to sign a blank check

allowing her to rescind whatever agreement may exist between the parties, regardless of the particular factual circumstances.  Not only does plaintiff fail to state a claim for rescission, she does not even allege enough facts to make her claim comprehensible.  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. Naked assertions devoid of factual enhancement do not suffice.  *Id.* at 1960; *Twombly*, 550 U.S. at 557.  Without at least informing the Court and Defendants about what agreements are at issue, it is not only impossible to litigate the claim, it is impossible for the Court to order any meaningful relief even if she were successful.  Unless the plaintiff can inform the Court and Defendants about what documents she seeks to rescind, she cannot state a justiciable claim.  *See Howell v. Am. Airlines, Inc.*, No. 05-CV-3628 (SLT), 2006 U.S. Dist. LEXIS 89229, at *10 (E.D.N.Y. Dec. 11, 2006) (dismissing claim where the complaint "does not even identify the agreement at issue, much less indicate which terms in that agreement were allegedly breached.").

## III.   PLAINTIFF FAILS TO ASSERT A PRIMA FACIE CLAIM OF RETALIATION UNDER THE FLSA.

Even if plaintiff engaged in a protected activity (she did not), Count Five must be dismissed because plaintiff does not allege any facts from which one could plausibly conclude that that a causal connection exists between any alleged protected activity and the alleged adverse action.  Put differently, plaintiff fails to allege a sufficient temporal relation between her "complaints" and the alleged adverse action.  *See King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003).

In her Complaint, plaintiff asserts that she complained about her wages "at various times" and "various periods of time," and that, "as a direct and proximate consequence of these requests for payment, and complaints regarding non-payment," the defendants terminated her employment and took other adverse actions.  (Compl. ¶¶ 61, 74, 127.)  Plaintiff relies on

temporal proximity to establish causation.   However, allegations about "complaints" that allegedly occurred "at various times" during a four year period are not sufficient to allege a causal connection between plaintiff's complaint and any adverse action.  The Fourth Circuit has explained that "[g]enerally speaking, *temporal evidence* alone cannot establish causation for a prima facie case of retaliation, unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'"   *Shields v. Fed. Express Corp.*, 120 Fed. Appx. 956, 963 (4th Cir. 2005) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (emphasis in original).   "[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee ***shortly after*** learning of the protected activity."  *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (emphasis added).   Retaliation claims are dependent upon establishing a close temporal relationship.   Where a plaintiff does not demonstrate a close temporal relationship, she fails to set forth a prima facie case of retaliation.  *See Smith v. Allen Health Sys.*, 302 F.3d 827, 833 (8th Cir. 2002) (finding that a two-week interval was "sufficient, but barely so").  Here, plaintiff alleges that the temporal proximity between the protected activity and the adverse consequences is measured in years, rather than days or weeks.  This is not a sufficient allegation of a causal connection.

Furthermore, plaintiff fails to assert anywhere in her Complaint that she specifically complained about FLSA violations during these four years, or that she, in any way, put Defendants on notice that she was asserting FLSA rights in a manner which "a reasonable employer [would] understand."  *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (2011).  Plaintiff only states that such "complaints" were about "not being paid . . . and what [plaintiff] felt to be the unlawfulness of this repeated practice on Defendants' part."

(Compl. ¶ 61.)  Such general "complaints" do not, as a matter of law, put defendants on notice that a plaintiff was asserting statutory rights protected by the FLSA.  As the Supreme Court has stated, "it is difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate because of that complaint."  *Id*. at 1335 (emphasis in original).  For each of the foregoing reasons, plaintiff's retaliation claim must be dismissed.

## IV.   PLAINTIFF'S DEFAMATION CLAIM FAILS TO ALLEGE SPECIAL DAMAGES OR CONDUCT THAT IS ACTIONABLE PER SE.

Plaintiff's assertion of "defamation and defamation per se" in Count Six fails to allege the essential elements necessary to state a defamation claim.  In Virginia, defamation claims are categorized as either defamation per quod or defamation per se.  *Jarrett v. Goldman*, 67 Va. Cir. 361, 368 (Portsmouth Cir. Ct. 2005).  Defamatory words which are actionable per se are those which:  (1) impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished;  (2) impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society; (3) impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment; or (4) prejudice such person in his or her profession or trade.  *M. Rosenberg & Sons v. Craft*, 182 Va. 512, 518 (1944); *Jarrett*, 67 Va. Cir. at 369.  All other defamatory words which, though not actionable per se, cause a person special damages are actionable as defamation per quod.  *Fleming v. Moore*, 221 Va. 884, 889 (Va. 1981).  Plaintiff has neither alleged conduct that is defamatory per se nor pled any special damages resulting from the alleged communications.  Accordingly, plaintiff's defamation claim should be dismissed.

### A.   Plaintiff Has Not Identified Any Statements By Any Defendant Pertaining To The Skills Or Character Required To Perform Her Occupation.

Plaintiff's defamation claim is based on the allegation that Ms. Umapathy told Modis, Inc., a customer of Ling Technologies (VA) with whom plaintiff never had any employment relationship, that plaintiff's educational qualifications were falsified.   (Compl. ¶ 74.)   This allegation is not enough to state a claim for defamation per se.   To state a claim for defamation per se, a plaintiff must allege that the defendant made false statements which prejudiced her in her profession or trade.   *Great Coastal Express v. Ellington*, 230 Va. 142, 334 S.E.2d 846, 849 (Va. 1985).   For such prejudice to exist, the statements must relate to "the skills or character required to carry out the particular occupation of the plaintiff."   *Fleming*, 221 Va. at 890.

Here, plaintiff does not allege that Ms. Umapathy told Modis that plaintiff could not adequately perform her job.   Nor does plaintiff allege that the particular educational qualifications were necessary to properly perform her job or that the absence of such qualifications would prejudice her in her profession or trade as a computer programmer.   In fact, plaintiff acknowledges that Modis was pleased with her work, and she does not claim that Modis knew or even cared about her educational qualifications.   (Compl. ¶ 75.)   Moreover, she does not allege that Modis refused to provide her with employment or any benefit as a result of any statements made by Ms. Umapathy.   Absent allegations that the educational qualifications at issue—whatever they may be—are essential to plaintiff's occupation, plaintiff cannot state a claim for defamation per se.

### B.   Plaintiff Has Not Pled Any Special Damages As A Result Of Statements Allegedly Made By Ms. Umapathy.

Plaintiff's claim for defamation per quod also fails because plaintiff does not allege any special damages in Count Six that resulted from the allegedly defamatory words.   Defamation

per quod consists of defamatory words falsely spoken which though not in themselves actionable, cause the party special damage.  *Fleming*, 221 Va. 884 at 889.  To state a claim of defamation per quod, a plaintiff **must** allege special damages.  *See Weaver v. Beneficial Finance Co.*, 200 Va. 572, 579 (Va. 1959) (plaintiff must allege special damages to maintain defamation per quod claim); *Reardon Commer. Interiors v. Adden Furniture*, No. 97-1363, 1998 U.S. App. LEXIS 2966, at *21 (4th Cir. 1998) ("Where the defamation is per quod, 'the injurious effect must be established by allegations and proof of special damage and in such cases it is not only necessary to plead and show that the words or actions were defamatory, but it must also appear that such words or conduct caused actual damage.'") (quoting *Shapiro v. Massengill*, 661 A.2d 202, 216-17 (Md. App. 1995)).  Plaintiff fails to allege any facts supporting damages in Count Six, instead merely asserting as a legal conclusion a boilerplate template ad damnum of $500,000 as "compensatory damages," in addition to punitive damages in her Count Six prayer for relief. Absent any allegation of a cognizable injury, and without facts connecting that injury to the allegedly defamatory conduct, the defamation claim must be dismissed.

### C.   Plaintiff Does Not Allege Any Defamatory Statements Made By Defendants.

Plaintiff's defamation claim against Defendants should also be dismissed because plaintiff does not allege that they made **any** defamatory statements whatsoever.  Plaintiff's Complaint focuses entirely on statements allegedly made by Ms. Umapathy.  In an apparent effort to extend potential liability as far as possible, plaintiff offers only the conclusory assertion that Ms. Umapathy "acted on behalf of, and/or with the actual and/or apparent authority of, LTI-PA, LTI-VA, and Keelakattu, in a manner as to justify imposition of liability for defamation against all of those parties."  (Compl. ¶ 131.)  Such conclusory allegation of an agency relationship between all of the defendants is insufficient and the failure to include facts from

which such a relationship can be plausibly deduced is fatal to plaintiff's defamation claim.  *See Harken Fin. Servs. v. Broadridge Fin. Solutions,* No. 09 Cal. 4088, 2009 U.S. Dist. LEXIS 100641, at *16  (N.D. Ill. Oct. 29, 2009) (dismissing complaint where plaintiff had not pled sufficient facts to establish that the defendant was acting with actual or apparent authority); *Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092 (NRB), 2007 U.S. Dist. LEXIS 91139, at *13 (S.D.N.Y. Dec. 10, 2007) (complaint dismissed where plaintiff only made conclusory allegations of an agency relationship but offered no facts from which inferences of actual or apparent authority could be drawn); *United States ex rel. Thomas v. Siemens AG*, No. 09-4414, 2010 U.S. Dist. LEXIS 40442, at *18-19 (E.D. Pa. Apr. 23, 2010) (dismissing claims where plaintiffs simply asserted that one party acted with actual or apparent authority of another, without alleging sufficient facts to support those theories); *Doll v. Ford Motor Co.*, No. 8:10-cv-01505-AW, 2011 U.S. Dist. LEXIS 95427, at *20 (D. Md. Aug. 25, 2011) ("it is insufficient to merely provide a general statement that the agency relationship exists").  Therefore, plaintiff's defamation claim against Defendants must be dismissed.

## V.   PLAINTIFF FAILS TO ASSERT A VALID CLAIM UNDER 18 U.S.C. § 1589.

Count Seven of the Complaint, which purports to assert a violation of 18 U.S.C. § 1589, should be dismissed because the allegedly wrongful conduct is not proscribed by 18 U.S.C. § 1589.   Section 1589 of the Victims of Trafficking and Violence Protection Act of 2000 criminalizes forced labor, and states in relevant part:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> (1)   by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2)   by means of serious harm or threats of serious harm to that person or another person;

(3)   by means of the abuse or threatened abuse of law or legal process; or

(4)   by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).

18 U.S.C. § 1589.  Plaintiff relies on Section 1589(a)(3), asserting that each defendant violated Section 1589 "by means of abuse or threatened abuse of the law or legal processes."  (Compl. ¶ 135.)  Plaintiff's claim is based on the "insufficient compensation" the Defendants allegedly provided to her while she was employed by Defendants.  Specifically, plaintiff claims that she was working in the United States on an H-1B visa, and was entitled to obtain compensation from the defendants based on her H-1B Labor Conditions Applications, her contract, and the FLSA. (Compl. ¶ 136.)

Courts have interpreted Section 1589(a)(3) as only applying to "*misuse* or threatened *misuse* of the law or legal process, not mere violation of a regulation."  *Alvarado v. Universidad Carlos Albizu, Inc.*, No. 10-22072-CIV-HUCK/O'SULLIVAN, 2010 U.S. Dist. LEXIS 87662, at *7 (S.D. Fla. Aug. 25, 2010) (emphasis in original).  Here, the absence of any alleged threats to compel plaintiff to perform work against her will, her reliance on statutory and contract violations, and her inability to establish that any defendants misused the law or legal process, requires that her Section 1589 claim be dismissed.

### A.   Plaintiff Articulates No Basis For Her Claim That The Defendants Forced Her To Labor Under Threat Of Harm.

Section 1589(a)(3) is inapplicable to plaintiff's Complaint because Section 1589(a)(3) "requir[es] that a defendant be accused of misusing or threatening to misuse legal process for a coercive purpose."  *Alvarado*, 2010 U.S. Dist. Lexis 87662, at *8.  Courts have held that a threat

by a defendant of deportation may support a claim under Section 1589(a)(3), but mere violations of regulations do not.  *Id.*  Because plaintiff does not—and cannot—allege that any of the defendants forced her to work under any threat, she relies on the conclusory assertion that the defendants obtained plaintiff's labor "under threat or coercion to [plaintiff], of deportation, and explicit and/or latent threats regarding her legal [immigration] status, in the United States." (Compl. ¶ 135.)  Such an assertion, unaccompanied by any supporting factual allegations, is meaningless.  *See Iqbal*, 129 S. Ct. at 1950 (stating that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").  Nowhere does plaintiff identify any "threats" that made against her.  Indeed, plaintiff does not even identify which of the defendants made "explicit and/or latent threats."  Moreover, describing the threat as "latent" merely compounds her pleading problems.  A latent threat is one which is perceived by the recipient but which is not apparent from the words alone.  Not only does plaintiff not provide the Court or defendants with the text of the threatening statement, but she refuses to even articulate the subtext that she perceived.  If this is permissible pleading, than any foreign employee working in the United States who relies on a visa can articulate a claim of "latent" coercion simply by virtue of the employee's legal status and the employer's ability to affect that status.

Apparently cognizant of her failure to identify any specific "threats" by the defendants, plaintiff instead alleges that Ms. Umapathy "on behalf of all Defendants, attempting to deliver on this threat of deportation, alleged to Prince William County Police that [Plaintiff] was 'illegally' present in the United States."  (Compl. ¶ 137.)  However, plaintiff does not allege that this supposed "threat" was made while plaintiff was working for any of the defendants.  Plaintiff was terminated by Ling Technologies (VA) on August 9, 2010 and the threat, according to plaintiff, was made "at some time prior to August 12, 2010."  (Compl. ¶ 137.)  Therefore, her forced labor

claim states the impossible.  The defendants could not have "knowingly provide[d] or obtain[ed] labor or services of Plaintiff by threatened abuse of law" because plaintiff was terminated before any alleged threat occurred.

But even if plaintiff could truthfully assert that she was employed by one of the defendants when the alleged conversation between Ms. Umapathy and the police took place, such a conversation is not a "threat of deportation" under Section 1589(a)(3).  *First*, the statement was conveyed to a police officer, not to plaintiff, and no threat exists unless it was communicated to the plaintiff.  Allegations of statements made to third parties and not directed toward the plaintiff are simply not threats.  *Second*, threats of deportation have only been found actionable under Section 1589 when the threat of deportation was also an attempt by an employer to force the plaintiff employee to remain.  *See, e.g., United States v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 208) (court found that defendant tried to "intentionally manipulate the situation so that [plaintiff] would feel compelled to remain"); *see also Alvarado*, 2010 U.S. Dist. Lexis 87662, at *10-11 (stating that *Calimlim* was a case in which the employer "relied on fear, including threats regarding immigration status, to control the plaintiff").  Here, not only was there no effort to compel plaintiff to continue working for Defendants, plaintiff's allegations show precisely the opposite—Ling Technologies (VA) did not want to employ plaintiff and, in fact, fired her before the alleged threat was made.

### B.    Allegations Of Statutory And Contract Violations Cannot Form The Basis of An Abuse Of Process Claim Under Section 1589.

Plaintiff's contention that the defendants violated the Labor Conditions Applications (which are governed by the Immigration and Nationality Act (INA), 8 U.S.C.S. § 1001, *et seq.*), breached their contract with plaintiff, and violated the FLSA (Compl. ¶ 137) do not, as a matter of law, describe the type of harms that Section 1589 was designed to prevent.  Such allegations

suggest "mere violations of regulation," not human rights abuses.  *Alvarado*, 2010 U.S. Dist. Lexis 87662, at *8.  This case closely parallels the factual scenario presented in *Alvarado*, where a plaintiff/employee who was originally working on an H-1B visa, was warned by his employer that it would stop sponsoring his labor certification and would not re-new his contract if the employee did not stop asking for wage increases.  *Id.* at *2-3.  The plaintiff filed suit asserting a Section 1589 claim, and argued that he was the victim of forced labor.  *Id.* at *3.  The court dismissed plaintiff's claim that his employer violated Section 1589(a)(3) by transgressing regulations governing application for permanent labor certification.  *Id*. at *9.  In dismissing this claim, the court held that a mere violation of a regulation is not "abuse or threatened to abuse." *Id*. at *8.  The court in Alvarado warned that "taking the logic of [plaintiff's] argument a step further, virtually all immigration regulation violations that adversely affect employees could be characterized as 'abuse or threatened abuse' of the law or legal process by the employer under § 1589(a)(3).[2]  Such a result is at odds with the stated purpose of the Act . . ."  *Id*.

In enacting Section 1589, Congress sought to "provide federal prosecutors with the tools to combat severe forms of worker exploitation that do not rise to the level of involuntary servitude . . . ." H.R. Conf. Rep. No. 106-939, at 101.  Congress created a private right of action under 18 U.S.C. § 1595 only because it sought to "address the increasingly subtle methods of traffickers who place their victims in modern-day slavery."  *Id*.  Certainly, Section 1589 was never intended to subject employers to criminal penalties merely because an employee believes she is not being fairly compensated or has a run-of-the-mill breach of contract dispute with her employer.  This is especially true where, as here, the employee had the option of simply leaving

---

[2] The court also found it significant that the regulation in that case contained no private right of action.  Similarly, in this case, there is "no private cause of action for a violation of the law governing H-1B visas unless administrative remedies have been exhausted."  *Alves v. Masters Entm't Group, LLC*, No. 3:07-CV-305-TS, 2008 U.S. Dist. Lexis 75736, at *10 (N.D. Ind. Sept. 30, 2008).

employment or accepting a position with a new employer in the United States by filing another

H-1B petition.   (Compl. ¶ 2 ("your Plaintiff currently resides in Fairfax County, Virginia"));

*Alvarado*, 2010 U.S. Dist. Lexis 87662, at *10-11 (employee is not covered under § 1589 when

the employee had viable exit options); *Ching Ye Wong v. Napolitano*, No: CV-08-937-ST, 2010

U.S. Dist. LEXIS 22324, *10-11 (D. Or. Mar. 10, 2010) ("[A]n alien already in a valid H-1B

status [is permitted] to accept a position with a new employer upon the timely filing of a new,

non-frivolous H-1B petition").

Since plaintiff has not alleged that any of the defendants threatened to deport plaintiff,

force her to labor against her will, withhold her travel documentation, or engage in any of the

actions that Section 1589 seeks to prevent, Count Seven must be dismissed.

## VI.   PLAINTIFF LACKS STANDING TO ASSERT AN ABUSE OF PROCESS CLAIM AND FAILS TO PLEAD FACTS NECESSARY TO STATE A CLAIM.

Plaintiff's abuse of process claim must be dismissed because she fails to allege that ***any***

legal process was directed toward her by any defendant.   The gravamen of plaintiff's abuse of

process claim is that after plaintiff's husband was convicted of stealing property belonging to

Ling Technologies (VA), a state prosecutor offered to recommend a suspended sentence for

plaintiff's husband if plaintiff agreed to release Ms. Umapathy from all personal liability.

Plaintiff rejected this request and, it appears from her complaint, she did not experience any

adverse consequences from doing so.

Nothing in these allegations identifies any legal process that was used improperly;

indeed, the allegations do not identify the use of any legal process against plaintiff at all.

Furthermore, even if the prosecutor's plea negotiations with plaintiff's husband could be

construed as abuse of process as to plaintiff (they cannot), plaintiff does not adequately allege

how the actions of a state prosecutor can be attributed to Ms. Umapathy or any of the other

defendants.  Since plaintiff has not alleged any cognizable abuse of process claim against the defendants, Count Eight must be dismissed.

### A.   Plaintiff Lacks Standing To Assert An Abuse Of Process Claim.

Plaintiff has no standing to assert an abuse of process claim pertaining to the sentencing of her husband in a criminal proceeding.  A plaintiff invoking the jurisdiction of a federal court must satisfy three requirements that combine to form the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiff must demonstrate that: (1) she has "suffered an injury in fact"; (2) there exists a "causal connection between the injury and the conduct complained of"; and (3) a favorable judicial ruling will "likely" redress that injury.  *Id.*  The burden to establish these elements rests with the party invoking federal jurisdiction.  *Id.* at 561; *Virginia ex rel. Cuccinelli v. Sebelius*, Nos. 11-1057 & 11-1058, 2011 U.S. App. LEXIS 18632, at *16 (4th Cir. Sept. 8, 2011).

Here, plaintiff alleges no cognizable injury as a result of abuse of process.  Abuse of process involves the wrongful use of process after it has been issued.  The essential elements of an abuse of process claim are "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 539 (1988); *see also Montgomery v. McDaniel*, 271 Va. 465, 469 (2006).  "The tort of abuse of process does not provide or implicate an indiscriminate right of third persons, indirectly affected by a prosecution, to separately advance an abuse of process claim." *Martel v. City of Newton,* 6 F. Supp. 2d 1243, 1247 (D. Kan. 1998); *see also Swanson v. Bixler*, 750 F.2d 810, 814 (10th Cir. 1984) (no standing to assert an abuse of process claim where the plaintiff suffered no damage to a legally protected interest); *Naythons v. Stradley, Ronon, Stevens & Young, LLP,* No. 07-4489 (RMB), 2008 U.S. Dist. LEXIS 35301, at

*9 (E.D. Pa. 2008) ("Concerning 'Plaintiff's second argument – that Defendants' petitions were "aimed" at Plaintiff, the law is clear that the legal process invoked by Defendants must have been used "against" Plaintiff.'").  A third party to a criminal proceeding, such as plaintiff, cannot be indirectly injured by an abuse of process as to the criminal defendant.  Any irregularities with the legal process that occurred in the criminal proceeding affect only the legal rights of the criminal defendant.

Plaintiff does not—and cannot—allege that her legal rights were affected in any way by the sentencing considerations made by the state prosecutor.  Nor does plaintiff claim that anyone initiated, continued, or procured civil or criminal procedures against her.  Without having been subject to any legal process, plaintiff has no standing to complain that the process was abused.  *See Martel*, 6 F. Supp. 2d at 1247 (dismissing abuse of process claim for lack of standing); *Assocs. Fin. Servs. Co. v. Bowman, Heintz, Boscia*, No. IP 99-1725-C-M/S, 2004 U.S. Dist. LEXIS 6520, at *74-75 (S.D. Ind. Mar. 31, 2004) (holding that without a legal right or interest affected by the legal process, the plaintiff lacks standing to bring an abuse of process claim).  Accordingly, her abuse of process claim in Count Eight must be dismissed.

### B.   No Factual Allegations Support Plaintiff's Assertion That A State Prosecutor Was Defendants' Agent During The Sentencing Of A Third Party.

Plaintiff claims that at a criminal trial in Prince William County against plaintiff's husband, who was convicted for the theft of a laptop computer from Ling Technologies (VA), the Assistant Commonwealth Attorney for Prince William County acted as the defendants' agent, and requested plaintiff to sign a release.  Such threadbare accusations are insufficient to withstand a motion to dismiss.  Whether the county prosecutor was an agent of defendants is a legal conclusion.  More particularly, it is a legal conclusion without any supporting factual allegations in the Complaint.  Since plaintiff's abuse of process allegation depends on nothing

more than unsupported "labels and conclusions," it must be dismissed. *Twombly*, 550 U.S. at 555; *see also Maung Ng We v. Merrill Lynch & Co.*, No. 99 Civ. 9687(CSH), 2000 U.S. Dist. LEXIS 11660 at *16 (S.D.N.Y. Aug. 15, 2000) ("Plaintiffs must do more than state the legal conclusion that MLIB was the defendants' agent[;] it must plead facts that support a finding that such agency existed."); *Richard v. Bell Atlantic Corp.*, 946 F. Supp. 54, 60 (D.D.C. 1996) (finding an allegation that defendant "operates through" its subsidiaries insufficient to hold defendant liable for the alleged discrimination of its subsidiaries); *Polacek v. Kemper County*, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010) ("[I]t is not enough merely to recite that there was an agreement or that defendants conspired or acted in concert, for these are conclusions, not facts."); *Hebert v. La. Licensed Prof'l Voc. Rehab. Counselors*, No. 09-1126, 2010 U.S. Dist. LEXIS 32309, at *9-10 (W.D. La. Mar. 30, 2010) (complaints which alleged that the private defendant acted "in concert with the state actor" were insufficient under *Twombly* standard since it lacked any factual basis and was "absolutely silent as to how [the private defendant] 'acted in concert with' any state actor").

### C. Plaintiff's Requested Remedies For The Alleged Abuse Of Process Are Not Logically Connected To Her Claim.

Nothing in the relief that plaintiff seeks in connection with her abuse of process claim bears any relation to the tort she claims to have suffered. Rather than seeking any compensation sought in connection with the alleged abuse of process, plaintiff seeks:

(a)     An affirmative and prohibitory injunction prohibiting LTI-PA, LTI-VA, Umapathy, and Keelakattu from using in any way, and ordering them to return, all originals and copies of, personal identification documents provided to Umapathy, as to Plaintiff and her husband's family members, and their property, India voting cards, property identification records, etc., as well as ordering the Said Defendants to retract any inquiries and/or defamatory statements made to parties and governmental units in India, and the United States (including, but not limited to the Department of Homeland Security (USCIS) and the U.S. Department of Labor and local police authorities), and anywhere else, regarding the Plaintiff's

qualifications, character and professional and personal integrity and honesty; and

(b)      an award of compensatory damages, all lost or temporarily foregone wages as should have been paid to her, together with economic and non-economic damages, against LTI-PA, LTI-VA, and Umapathy, and Keelakattu, jointly and severally, in the amount of five hundred thousand dollars ($500,000.00)

(Compl. at 37.)

Nothing in plaintiff's prayer for relief applicable to the abuse of process claim has any logical nexus to her claim; rather, plaintiff appears to be using the abuse of process claim as a vehicle for obtaining relief that plaintiff requests in other counts.  For example, her request for compensatory damages, in which she seeks "all lost or temporarily foregone wages" (Compl. ¶ 37(b)), mirrors the compensatory relief sought in her FLSA claims.  However, plaintiff nowhere suggests that the alleged abuse of process had any effect on her job.  Similarly, plaintiff's request for injunctive relief requiring defendants "to retract any inquiries and/or defamatory statements made to parties and governmental units" and return specified (and unspecified) documents bears no connection to the claim asserted.  (Compl. ¶ 37(a).)  Nowhere in the Complaint does plaintiff assert that any documents were taken from her as a result of the alleged abuse of process by the county prosecutor.  Instead, plaintiff simply uses the abuse of process claim as a vehicle for restating the request for relief contained in the defamation claim.  The lack of any logical nexus between the relief sought and the substance of the claim demonstrates that the abuse of process claim is little more than a makeweight allegation devoid of merit.  Since plaintiff has failed to articulate any basis for asserting an abuse of process claim, and her requested relief is not connected in any logical way to the substance of her allegations, the abuse of process claim should be dismissed.

### D.   Plaintiff Does Not Allege Any Abuse Of Process By Defendants.

Plaintiff's abuse of process claim against Defendants must also be dismissed because she does not allege that they participated in any abuse of process.  Plaintiff offers only the conclusory statement that "[a]t all times referenced herein, each of the above acts was taken by the individual Defendants and their agents, with actual and/or apparent authority, on behalf of the above-referenced Defendants."  (Compl. ¶ 79.)  Such conclusory allegations of an agency relationship between all of the parties is insufficient and the failure to include facts from which such a relationship can be plausibly deduced is fatal to plaintiff's abuse of process claim against Defendants.  *See Harken,* 2009 U.S. Dist. LEXIS 100641, at *16 (dismissing complaint where plaintiff had not pled sufficient facts to establish that the defendant was acting with actual or apparent authority); *Cannon*, 2007 U.S. Dist. LEXIS 91139, at *14 (dismissing complaint where "[t]he complaint simply states that the defendants acted 'as agents for each other,'. . . but offers no facts from which inferences of actual or apparent authority in this  context can be drawn."); *United States ex rel. Thomas v. Siemens AG*, 2010 U.S. Dist. LEXIS 40442, at *18-19 (dismissing claims where plaintiffs simply asserted that one party acted with actual or apparent authority of another, without alleging sufficient facts to support those theories); *Doll*, 2011 U.S. Dist. LEXIS 95427, at *20 ("it is insufficient to merely provide a general statement that the agency relationship exists").

## VII.   PLAINTIFF'S "QUANTUM MERUIT" OR "UNJUST ENRICHMENT" CLAIM IN COUNT NINE MUST BE DISMISSED.

Plaintiff's claim for quasi-contractual relief in Count Nine must be dismissed because the allegation within the Count of an express contract bars the claims for unjust enrichment or quantum meruit.  A plaintiff may not allege the existence of a valid contract and simultaneously assert a quasi-contract theory of relief.  Under Virginia law, where the relationship between the

parties is founded upon an express contract, an implied contract governing the relationship between the parties is precluded. *Mongold v. Woods,* 278 Va. 196, 204, 677 S.E.2d 288, 292 (Va. 2009); *Nedrich v. Jones,* 245 Va. 465, 477, 429 S.E.2d 210, 207 (Va. 1993); *Campbell County v. Howard,* 133 Va. 19, 54, 112 S.E. 876, 886 (Va. 1922) ("That where the parties have come to an express contract none can be implied, has prevailed so long as to be reduced to an axiom in the law."). While a plaintiff may plead inconsistent theories of recovery, a claim cannot survive if a fact contrary to the claim is expressly incorporated into the claim. *Lion Assocs., LLC v. Swiftships Shipbuilders, LLC*, No. 1:10-CV-189, 2010 U.S. Dist. LEXIS 135095, at *13-14 (E.D. Va. Dec. 20, 2010) (granting summary judgment on unjust enrichment claim where the plaintiff's unjust enrichment claim incorporates the preceding allegations by reference, which include allegations of the existence and application of the parties' written agreement); *Deltacom, Inc. v. Budget Telecom, Inc.*, No. 5:10-CV-38-FL, 2011 U.S. Dist. LEXIS 54488 , at *16-17 (E.D.N.C. May 20, 2011) (dismissing unjust enrichment and quantum meruit claims where the quantum meruit and unjust enrichment claims expressly incorporated by reference that an express contract existed between the parties).

Here, plaintiff expressly alleges the existence two separate contracts governing the dispute. (Compl. ¶ 3.)  These specific allegations of governing contracts are incorporated by reference in to the claim for unjust enrichment or quantum meruit in Count Nine. (Compl. ¶ 143.)  Since plaintiff pleads facts in support of her unjust enrichment/quantum meruit claim that demonstrate that quasi-contractual relief is unavailable, the claim must be dismissed. *See Lion Assocs.*, 2010 U.S. Dist. LEXIS 135095, at *13-14.

## CONCLUSION

For the foregoing reasons, Defendants requests that the Court dismiss Counts One, Two, Four, Five, Six, Seven, Eight, and Nine.

Dated: September 30, 2011                    Respectfully submitted,


_____/s/ Jeffrey L. Rhodes_____
Jeffrey L. Rhodes, VA. Bar No. 44475
jlr@albo-obon.com
Michael E. Stamp, VA Bar No. 79995
mes@albo-oblon.com
ALBO & OBLON, LLP
2200 Clarendon Blvd., Suite 1201
Arlington, VA  22201
Tel:  (703) 312-0410
Fax:   (703) 312-0415
jlr@albo-oblon.com
mes@albo-oblon.com

*Counsel for Defendants Ling Technologies, Inc. (a Virginia corporation) and Ling Technologies, Inc. (a Pennsylvania corporation)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2011, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

> Christopher R. Rau, Esq.
> Law Offices of Christopher R. Rau
> 2007 North 15th Street, Suite 7
> Arlington, Virginia 22201
>
> *Counsel for Plaintiff*

/s/ Jeffrey L. Rhodes
_____
Jeffrey L. Rhodes
